UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GELMART INDUSTRIES INC., | Civil Action No. |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| | DEMAND FOR JURY TRIAL |
| JAY BERNSTEIN, | |
| Defendant. | |

Plaintiff Gelmart Industries Inc., by and through its attorneys Garson, Ségal, Steinmetz,
Fladgate LLP for its complaint against Defendant Jay Bernstein alleges on knowledge as to its own
acts and otherwise on information and belief as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1. This is an action for compensatory, declaratory and injunctive relief pursuant to, *inter alia,* the
   Declaratory Judgment Act, 28 U.S.C. § 2201, brought by Gelmart Industries Inc. ("Gelmart")
   to enjoin dissipation of confidential information belonging to Gelmart by Jay Bernstein
   ("Bernstein"), in violation of his contractual obligations, and to obtain a declaration of the
   respective rights of the parties concerning termination of Bernstein's employment.

2. Plaintiff designs, manufactures and sells women's apparel to major retailers. Defendant was
   employed by Plaintiff as an Executive Vice President from May 26th 2005 until July of 2011,
   pursuant to an agreement, the details of which were established in an email exchange. In July
   of 2011, Defendant's employment was terminated.

3. Defendant has since alleged that he is entitled to a severance package that was never part of
   any employment agreement or correspondence. Plaintiff relies upon the email, which clearly

states the terms of employment and acceptance by the Defendant. Therefore, an actual controversy exists as to the contractual obligations of the parties, which can be settled by a declaratory judgment.

4. Additionally, upon information and belief, during his employment Defendant Bernstein was disseminating confidential information to competitors and suppliers in a manner adverse to the interests of Plaintiff. This conduct breached Bernstein's written confidentiality agreement with Gelmart to maintain the confidentiality of non-public information.

## PARTIES

5. Gelmart is a Delaware Corporation, authorized to conduct business in New York State. Its principle place of business located at 136 Madison Ave., 4th floor, New York, NY 10016. Gelmart designs, manufactures and sells apparel to major retailers.

6. Bernstein is a resident of Florida who entered into a contractual employment relationship with Gelmart. At all times relevant to this case, Gelmart's primary business operations were conducted in New York. Additionally, Defendant Bernstein came to New York to sign the confidentiality agreement the terms of which Plaintiff now seeks to enforce. As per the terms of his employment, Bernstein officially operated out of Gelmart's New York offices and came to New York on a monthly basis.

## I.   STATEMENT OF JURISDICTION

7. This action seeks to collect damages based on Defendant's breach of contractual duties to Plaintiff. This action also seeks declaratory relief for an amount exceeding $75,000 exclusive of interest, costs, or attorney's fees. This Court has subject matter jurisdiction of claims related to the Declaratory Judgment Act, 28 U.S.C. § 2201, and of the state law claims under

28 U.S.C. §1367. In addition, there is complete diversity among the parties and jurisdiction is proper under 28 U.S.C. §1332.

8.  Defendant entered a contractual relationship in New York, with a corporation whose principal place of business was in New York, and has visited the state several times pursuant to his employment relationship. As such, he is subject to personal jurisdiction in the State of New York by virtue of his submission to such jurisdiction. Gelmart was and will continue to be injured in the State of New York. Also, the confidentiality agreement discussed below includes a provision that it shall be construed and enforced under the laws of the State of New York. Venue is thus proper pursuant to 28 U.S.C. §1391(b).

## II. STATEMENT OF FACTS

9.  Gelmart designs, manufactures and sells apparel to major retailers. Its principal place of business is in New York.

10. On April 8, 2002 Gelmart first entered into an employment agreement with Bernstein to market and sell Gelmart's products to major retailers, including Wal-Mart. As with all sales executives, his duties were to maintain and increase sales with Gelmart's clients

11. The agreement incorporated the terms of Gelmart's employee handbook, which govern, inter alia, termination and severance.

12. Bernstein left his first period of employment with Gelmart on March 28, 2005.

13. Bernstein subsequently returned to Gelmart on May 26, 2005. The terms of this new period of employment were established in an email exchange, between the parties, and which were accepted by Bernstein.

14. During this period of employment Bernstein availed himself of the benefits laid out in the employee handbook including 401K participation and medical benefits.

15. On February 24th, 2010, pursuant to a company-wide policy, Bernstein signed a "Confidentiality, Non-Disclosure and Non-Compete Agreement" with Gelmart (the "Agreement"). The Agreement clearly defines the duty of Gelmart's employees to maintain the confidentiality of sensitive company information.

16. Upon information and belief, Bernstein violated the Agreement on several occasions. Firstly, during his employment, Bernstein contacted employees of competing apparel companies, and those outside of the company who could benefit from such information. Those communications, *inter alia*, assisted the competitor companies to enter or deepen their sales relationships with Wal-Mart in the same product categories as then occupied by Gelmart. This activity breached Bernstein's actual duty to maintain the confidentiality of Gelmart's information, as per the Agreement.

17. Upon information and belief, during his employment, Bernstein contacted competitor's employees, which assisted them in obtaining funding and selling the competitors' products at Wal-Mart. This created additional competition for Gelmart and caused it to suffer reduced floor space and resultant lost sales. It also introduced new players into a small market, thus creating the potential to undermine Gelmart's longstanding and profitable relationship with its clients and creating substantial and irreparable economic harm. Upon information and belief, Bernstein also gave sensitive inside information to Gelmart's competitors in the same markets.

18. On July 28, 2011, Bernstein's employment with Gelmart was terminated in a meeting with Gelmart's executives. Upon information and belief, Bernstein was under the impression that he would be terminated, contrary to any assertion that he could never be dismissed.

19. Upon information and belief, Bernstein was using his position at Gelmart to conduct meetings with investment companies in order to discuss investment opportunities with Gelmart's competitors. After his termination, he officially created a consulting company to assist investors and companies seeking to compete with Gelmart. He is thereby using information acquired at Gelmart and his position in the company for the benefit of Gelmart's competitors. This activity would violate the Agreement, which states that Bernstein may not engage in activity that would harm Gelmart or assist Gelmart's competitors during his employment and for one year thereafter.

20. After termination, Bernstein has made a number of allegations including, *inter alia*, that there was an oral agreement that he would not be terminated. Bernstein has also produced an unsigned document, which he alleges was his employment agreement. The unsigned document, which Bernstein produced, states that "Gelmart may only terminate its obligations which are required by this Agreement if Bernstein commits an act materially injurious to Gelmart or its employees, which results in his being convicted of fraud, embezzlement, or any other felony." The unsigned document further purports to create an obligation upon Gelmart to pay Bernstein his salary for an additional two years. Not only are the terms of this document disputed; it was never transmitted to Gelmart at any point prior to or during Bernstein's employment.

21. Upon information and belief, in the last number of months of his employment, Bernstein further engaged in a course of conduct to disseminate confidential information to Gelmart's competitors.

## Count I (Breach of Contract)

22. Gelmart re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

23. The Agreement required Bernstein to refrain from disclosing confidential and sensitive information to parties outside of Gelmart.

24. Upon information and belief, Bernstein has violated this contract, disclosed confidential information, and caused harm to Gelmart.

## Count II (Declaratory Judgment)

25. Gelmart re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

26. Gelmart asserts that allegations of lifetime employment are vacuous and are undermined by explicit email correspondence and that the unsigned document produced by aDefendant after his termination, and referenced in paragraph 20 above, holds no contractual weight.

27. Gelmart further relied upon the emailed agreement that did not include the terms found in the unsigned document. In particular, Gelmart asserts that Bernstein was entitled to a different severance package upon termination. According to Gelmart's employee manual, Bernstein was entitled to only six weeks of severance.

28. Bernstein was an 'at will' employee or an employee whose employment could be terminated for cause.


## Count III (Intentional Interference with Prospective Economic Advantage)

29. Gelmart re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

30. As discussed in paragraph 16 et seq. above, upon information and belief, Bernstein assisted Gelmart's competitors to enter a sales relationship with Wal-Mart. This intentional activity interfered with Gelmart's business relationship with Wal-Mart.

31. This activity reduced the space available for Gelmart's products in Wal-Mart's retail store. This created a significant potential to undermine Gelmart's longstanding and profitable relationship with Wal-Mart and further causing irreparable and substantial economic injury to Gelmart.

## Count IV (Agent Breach of Fiduciary Duty)

32. Gelmart re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

33. As discussed in paragraph 16 above, upon information and belief, Bernstein assisted Gelmart's competitors to obtain funding and increase their activity and competitive advantage.

34. As an employee of Gelmart, Bernstein had a fiduciary duty and a duty of care towards Gelmart. Firstly, this includes having an undivided loyalty towards Gelmart and to help in assisting and promoting Gelmart and not its competitors. Secondly, he had a duty to promote prospects for financial gain directly to Gelmart and not its competitors.

35. Upon information and belief, on at least one occasion Bernstein planned or intended and may have carried out a plan to sell Gelmart products in a way that was not authorized by Gelmart's board and/or officers and with the intent to circumvent passing on the profits to Gelmart.

## Count V (Unfair Competition)

7

4. Disgorgement of any profits Defendant obtained from consulting work while employed at
   Gelmart; and

5. An award of costs and pre-judgment and post-judgment interest; and

6. Such other and further relief as the court may deem just and proper.


Dated: New York, New York
       December 6, 2011

                                        Respectfully Submitted,
                                        Garson, Segal, Steinmetz Fladgate LLP

                                        By: _____
                                             Bar No. RG1521

                                        164 West 25th Street Suite 11R
                                        New York, NY 10001
                                        Telephone (212) 380-3623
                                        Facsimile  (347) 537-4540

                                        Attorneys for Plaintiff